SHELDON F. KWIAT AND RITA KWIAT, ET AL., Petitioners [1] v. COMMISSIONER OF INTERNAL REVENUE, Respondent Kwiat v. Commissioner
Docket Nos. 41301-86; 41302-86; 41305-86
United States Tax Court
T.C. Memo 1989-382; 1989 Tax Ct. Memo LEXIS 381; 57 T.C.M. (CCH) 1104; T.C.M. (RIA) 89382; July 26, 1989
*381 Petitioners were nominal lessors of metal shelving to a manufacturer of folding cardboard boxes, which sought off-balance sheet financing. Held, Petitioners, on motions for partial summary judgment, have not established that the transaction was a true lease rather than a financing arrangement for the supposed lessee. Consequently, petitioners' Motions for Summary Judgement are denied. Leon C. Baker, for the petitioners. George H. Soba, Marsha Keyes, and Richard Goldman, for the respondent. WOLFE
MEMORANDUM OPINION WOLFE, Special Trial Judge: These cases are before the Court on petitioners' Motions for Partial Summary Judgment filed pursuant to Rule 121 of the Tax Court Rules of Practice and Procedure.[2]
Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax
Petitioners
Docket No.
Year
Deficiency
Sec. 6653(a) [3]
Sheldon F.
41301-86
1980
$ 17,913
and Rita Kwiat
1981
6,077
1982
3,651
Lowell M. and
41302-86
1980
$ 17,853
Fern Kwiat
1981
6,139
$ 307
1982
3,351
David S. and
41305-86
1980
$ 18,534
$ 927
Shirley R. Kwiat
1981
12,939
1982
3,651
*383 Respondent determined further that the underpayments of taxes for each of the three years in each case are subject to interest at a rate determined under section 6621(d). [4] Respondent disallowed the investment credit claimed by petitioners under section 46(e)(3)(B) and petitioners do not seek summary judgment on this issue. Rule 121(b) provides that a motion for summary judgment is to be granted if "there is no genuine issue as to any material fact and * * * a decision may be rendered as a matter of law." The burden of proof is on the moving party, and we are *384 required to view the factual materials and inferences to be drawn therefrom in the light most favorable to the party opposing the motion. Greene v. Commissioner, 88 T.C. 376, 377 (1987); Casanova Co. v. Commissioner, 87 T.C. 214, 217 (1986). The factual background of the case is set forth below. The parties appear to agree as to the terms of the leasing agreement and the options and some of the circumstances of the execution of the agreements. Respondent objects to petitioners' motions as premature. Respondent further objects that such motions and the tactics of petitioners' counsel prevented respondent from conducting discovery to ascertain all the facts of this case. The parties disagree as to the proper characterization of the so called leasing agreement and options. Petitioners Sheldon and Rita Kwiat resided in Great Neck, New York and petitioners Lowell and Fern Kwiat resided in Muttontown, New York when they filed their respective petitions. Sheldon Kwiat and Lowell Kwiat are brothers. Petitioners David and Shirley Kwiat are the parents of Sheldon and Lowell Kwiat, and resided in Tamarac, Florida when they filed their petition. *385 Petitioner-husbands are in the diamond business. For many years, members of the Kwiat and Levkoff families have been friendly. Members of the Levkoff family are the principals of Standard Folding Cartons, Inc. (hereinafter referred to as Standard), a manufacturer of folding cardboard boxes. Sometime during 1980 Steven Levkoff told Lowell Kwiat that Standard was seeking financing for the purchase of approximately $ 350,000 worth of industrial shelving. Standard needed this shelving to store its inventory of boxes. Standard was seeking financing which would neither impair its bank credit line nor adversely effect Standard's borrowing capacity. Lowell Kwiat indicated that the Kwiat family might be interested in providing financing for the shelving under a leasing arrangement. At least initially, a sale-leaseback arrangement was contemplated by the parties. Thereafter, Sheldon Kwiat, Lowell Kwiat, David Kwiat and Jacques Roison (a family relation not a party to these proceedings) entered into an agreement with Standard for the lease of industrial shelving for a term of 59 months commencing December 12, 1980. The lease was a "net lease" and Standard, as lessee, was responsible *386 for all costs and expenses arising out of or in connection with the lease of the shelving. Under the net lease, Standard was responsible for all fees and taxes incurred in connection with the shelving (excluding taxes based on or measured by the lessors' net income) and was required to insure the shelving at its own expense for the benefit of the lessors. Standard also was responsible for maintaining and repairing the shelving (except for reasonable wear and tear) and bore the risk of loss. If the shelving was rendered unusable as a result of physical destruction, the lease continued in force without any abatement of rent. Subject to the consent of the lessors, the lessee was entitled to replace shelving from time to time and to move the shelving to such locations in New York City as it deemed fit. The net lease provided that title to the shelving remained at all times with the lessors and that the lessors had the right to inspect the equipment. Standard paid a monthly rent of $ 5,315, subject to adjustments for fluctuations in interest rates. Petitioners invested approximately $ 80,000 of their own money and borrowed $ 273,000 from a bank. The rental payments under the lease *387 were sufficient to amortize $ 193,329 of the $ 273,000 debt, leaving a balance of $ 79,671 at the end of the lease. After filing the motions for summary judgment here in issue, petitioners disclosed the existence of two option agreements. The first of these options, a put, gave the lessors the right to sell the shelving to Henry Levkoff, Steven Levkoff and Andrew Levkoff for a fixed price of $ 238,910. This put was exercisable between October 13, 1985, and December 3, 1986. By its terms the put would be voided by an extension or renewal of the original lease. The second option, a call, gave Henry Levkoff, Steven Levkoff and Andrew Levkoff an option to buy the shelving for $ 159,452. This call was exercisable from November 13, 1987 to December 31, 1987. The exercise period of the call was more than two years after the termination of the original lease and the commencement of the exercise period of the put. Petitioners suggest that the put and call agreements were intended to force the parties to negotiate a new lease. The lease, the put and the call all are dated December 12, 1980. Ultimately, the parties concluded a new lease on April 1, 1983. Respondent determined that *388 petitioners did not incur the benefits and burdens of ownership of the shelving and did not make, in substance, a true economic investment in the shelving. Alternatively, respondent determined that the acquisition and lease of the shelving was not a transaction entered into for profit under section 183(a). Petitioners urge that the entire transaction here is spelled out in detailed written agreements, that these agreements demonstrate that petitioners assumed the benefits and burdens of ownership, and that these facts establish that petitioners entered into a leasing transaction for profit since the lease terms were calculated to yield a substantial return on petitioners' investment. A lease transaction should be respected if the lessor retains significant and genuine attributes of a traditional lessor. Frank Lyon Co. v. United States, 435 U.S. 561, 584 (1978). If the benefits, obligations and rights of the lessor are essentially those of a secured seller, the substance of the transaction will govern and the transaction will be deemed a sale. Smith v. Commissioner, 51 T.C. 429, 438-439 (1968). *389 Net leases commonly are used in business today and do not necessarily reflect an absence of ownership. Hilton v. Commissioner, 74 T.C. 305, 348 (1980), affd. per curiam 671 F.2d 316 (9th Cir. 1982), cert. denied 459 U.S. 907 (1982). The characterization of such net leases depends upon whether petitioners have succeeded in showing "a genuine multiparty transaction with economic substance, compelled or encouraged by business realities and imbued with tax-independent considerations and not shaped solely by tax-avoidance features that have meaningless labels attached." Hilton v. Commissioner, 74 T.C. at 364; Frank Lyon Co. v. United States, supra at 583-584. Our analysis of petitioners' lease transaction in large part turns upon the option agreements. The option agreements here were structured so that if petitioners did not sell the shelving at the end of the lease term for $ 238,910, the Levkoffs later could exercise their call for $ 159,452. The put protected petitioners from substantial risk of loss if the *390 shelving declined in value over the term of the lease. Petitioners' own calculations demonstrate that the put price was sufficient to repay the mortgage balance and original investment, leaving $ 79,239 as profit. On the other hand, petitioners would have lost any chance of appreciation if the call option had been exercised. At best, the call price was sufficient to repay the debt and return petitioners' investment. The combination of the put and call options indicate a strong likelihood that petitioners would exercise their option and sell the shelving or enter into an alternative arrangement at least equally profitable and free of risk to them. While petitioners bore the risk that Standard might default, that risk was identical to the risk that petitioners would bear as a secured seller. Aderholt Specialty Co. v. Commissioner, T.C. Memo. 1985-491. If the so-called leasing arrangement is considered with the favorable put option, the combined agreements on their face are substantially equivalent to a secured loan. The amount advanced, the rate of return, the dates and amounts of payment and the security all are specified in the agreements. The so-called lessors *391 or lenders bear no risk from the fluctuation in the value of the property financed. Apparently, the Kwiats did not exercise their put option but negotiated an extension of the agreement with Standard. This extension took place after the years in issue and we have not been convinced of its relevance to the present issue. Moreover, this agreement also might be explained as a debt financing arrangement rather than a true lease. From the facts presented to us, we are not convinced that petitioners and Standard entered into a true lease. On the contrary, the agreements are at least equally susceptible to interpretation as a secured loan. Respondent has protested that petitioners have failed to respond to discovery requests and disclosed the vital put and call options only at the very last moment before the hearing. Petitioners' counsel stated that he believed the options had been disclosed previously, but he had no documentation of furnishing the options. Such circumstances are consistent with our view that a trial is necessary in order to resolve genuine issues of material fact. Because of our opinion on other issues as set forth above, we have expressed no view as to respondent's *392 determination with respect to the applicability of section 183(a). Orders will be issued denying petitioners' motions. Footnotes
1. Cases of the following petitioners were consolidated for purposes of trial, briefing and opinion: Sheldon F. Kwiat and Rita Kwiat, docket No. 41301-86, Lowell M. Kwiat and Fern Kwiat, docket No. 41302-86, David S. Kwiat and Shirley R. Kwiat, docket No. 41305-86.↩
2. These cases were assigned pursuant to the provisions of section 7443A(b) and Rule 180 et seq. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure and all section references are to the Internal Revenue Code, as amended and in effect for the year or years in issue.↩
3. Respondent incorrectly refers to section 6653(a) as section 6653(a)(1) in the notices of deficiency for all three of the years in issue. Section 6653(a) was redesignated as section 6653(a)(1) by section 722(b) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, applicable to taxes the last date prescribed for payment of which is after December 31, 1981.↩
4. Section 6621(d) was redesignated as section 6621(c) by section 1511(c)(1)(A)-(C) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2750.↩